UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| TERRANCE O. ROBINSON,              )<br>                                                          )<br>            Petitioner,              )<br>    v.                                            )<br>                                                          )<br>UNITED STATES OF AMERICA,   )<br>                                                          )<br>            Respondent.              ) | Case No. 08-CV-2280 |

**OPINION**

Petitioner, Terrance O. Robinson, was indicted on seven counts of bank fraud in case number 06-CR-20077 on December 7, 2006. On March 30, 2007, Petitioner entered a plea of guilty to all seven counts charged in the indictment. He was sentenced to 63 months in the Bureau of Prisons on July 20, 2007. The court's judgment was affirmed on appeal by the Seventh Circuit on August 7, 2008. Petitioner filed this pro se Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1) on November 17, 2008. Petitioner filed a Motion to Amend Pursuant to Federal Rule of Civil Procedure 15(c) (#3) which essentially clarified the claims raised in his earlier Motion (#1). For the following reasons, Petitioner's Motion to Amend (#3) is GRANTED and Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

BACKGROUND

Petitioner was indicted on December 7, 2006, on seven counts of bank fraud. Specifically, Petitioner was charged with knowingly executing and attempting to execute a scheme to defraud the First Midwest Bank of Danville, Illinois, the deposits of which were insured by the Federal Deposit

Insurance Corporation, and to obtain moneys and funds from the bank by fraudulent pretenses and representations. As part of this scheme, Petitioner, along with others obtained counterfeit checks via FedEx from Los Angeles, purportedly drawn on the accounts of legitimate entities, such as the Danville Family YMCA, the Office of the Circuit Clerk of Grundy County, Illinois, Goodwill of Los Angeles, and Norbrek LP. Petitioner and others made the checks payable to persons that they recruited to cash the counterfeit checks.

In furtherance of the scheme, Petitioner and others would drive the persons, along with the counterfeit checks, to First Midwest Bank branches in Danville to cash the checks, as well as to other Danville locations to cash the checks such as Main Package Liquor, the Currency Exchange, and Wal-Mart. The fraudulently obtained proceeds were then distributed among the scheme participants, including Petitioner. In total, the victims of Petitioner's scheme lost over $30,000. The indictment further alleged that Petitioner aided, abetted, counseled and induced others to pass and cash the following checks at First Midwest Bank, knowing full well that each check was counterfeit:

#1- 1/12/06- Check #31613 in the amount of $968.43 drawn on Grundy County Circuit Clerk

#2- 1/13/06- Check #31615 in the amount of $978.46 drawn on Grundy County Circuit Clerk

#3- 1/17/06- Check #19879 in the amount of $987.67 drawn on Danville Family YMCA

#4- 1/30/06- Check #32121 in the amount of $994.72 drawn on Grundy County Circuit Clerk

#5- 1/30/06- Check #32128 in the amount of $996.83 drawn on Grundy County Circuit Clerk

#6- 1/30/06- Check #22625 in the amount of $988.13 drawn on Danville Family YMCA

#7 - 1/30/06- Check #22623 in the amount of $950.83 drawn on Danville Family YMCA

Each of those separate fraudulent checks were listed as a separate count, totaling 7 counts in the indictment of December 7, 2006. Each count was done in violation of 18 U.S.C. § 2, 1344(1)

and (2). On March 30, 2007, Petitioner entered a plea of guilty at a change of plea hearing to all seven counts contained in the indictment. He was represented at the hearing (and subsequent sentencing) by CJA counsel Michael J. Zopf. Petitioner engaged in a lengthy colloquy with this court concerning the charges against him contained in the indictment. The court asked him if he understood that in the proposed plea agreement he would be entering a plea of guilty to all seven of the counts charged in the indictment charging him with bank fraud. Petitioner answered that he did. The court also found that the scheme Petitioner had entered into was one that would indicate a high level of sophistication and intelligence. Petitioner also agreed that he had ample opportunity to discuss the case and plea agreement with his attorney and was satisfied with his representation. Petitioner also affirmed that he was not being forced to plead guilty or that any promises had been made to him other than what was contained within the plea agreement. The court and Petitioner's attorney discussed what possible sentencing range Petitioner was looking at and it was believed that Petitioner could face anywhere from 46 to 63 months in the Bureau of Prisons. Petitioner stated he thought he would be looking at maybe two years in prison. The court then informed Petitioner that it, at the time of the change of plea hearing, could not with certainty say what Petitioner's sentence would be, but asked Petitioner if he was still willing to plead guilty, even though the sentence was of yet unknown length and may be higher than what he expected based on criminal history and other factors. Petitioner answered that it was still his desire to plead guilty. The court also noted that until the court arrives at the final calculations and makes determinations under the statute, Petitioner's final sentence is just an estimation that could go back and forth in years, either way. Knowing that, Petitioner stated he was still willing to plead guilty. Petitioner plead guilty to all seven counts charged in the indictment.

Petitioner was sentenced by this court on July 20, 2007. At sentencing, Petitioner's attorney addressed four unresolved objections Petitioner had with the Pre-Sentence Report (PSR). The first objection was withdrawn by attorney Zopf, which concerned whether the offense level is a 6 or 7, as that objection was based on an old guidelines manual. The second objection was whether the offenses charged in the indictment were accomplished through "sophisticated means" as alleged in the PSR and thus subjecting Petitioner to a 2-level upward enhancement in his total offense level. Zopf informed the court that Petitioner did not intend to testify and that he would be making a legal argument as to his objection.

The sophisticated means portion of the PSR was contained on page 14 in paragraph 39. It alleged that Petitioner placed a telephone number on at least one of the bogus checks, representing it as the legitimate phone number of the business holding the bank account. Petitioner arranged so that when someone dialed that number, it would be automatically linked to his personal cell phone, thus helping increase the chances of the bogus check scheme working. The PSR further alleged that on January 9, 2006, an employee of the Currency Exchange in Danville telephoned that number on a check purportedly drafted on the account of a business (Norbrek LP) at California Cal-Trust. The employee's call was forwarded to Petitioner, who vouched for the authenticity of the $3,900 bogus check. The PSR concluded that:

> "This evidence shows the defendant had not only devised a scheme to defraud, but he also had a backup plan in place to facilitate the cashing of the bogus check(s) if they were questioned by representatives of the bank or currency exchange. This demonstrates an attention to detail and a level of sophistication not ordinarily seen in typical fraudulent check offenses. As the offense involved sophisticated

means, a two-level upward adjustment is applied." U.S.S.G. § 2B1.1(b)(10)(I).

Attorney Zopf argued that under <u>United States v. Harvey</u>, 413 F.3d 850 (8th Cir. 2005), Petitioner's scheme was not accomplished by sophisticated means. Zopf compared the scheme in <u>Harvey</u>, where sophisticated means were found to have been used, to the scheme involving Petitioner. Zopf noted that in <u>Harvey</u> the defendants had new identification documents created, traveled to new offices, and generated false checks with valid routing numbers. That level of sophistication was not present in the instant case according to Zopf. Rather, Petitioner's scheme was "stupid" and thought up by a "bunch of crack heads" with no level of sophistication. Zopf continued that to suggest the scheme involved sophisticated means "shocked the conscience" as compared to other schemes the court has seen in the past.

The government countered that the checks produced by Petitioner mirrored the official looking checks of the Circuit Court of Grundy County, Illinois, of the Danville Family YMCA, and of Norbrek LP. The government also pointed to how Petitioner put the phone number on the check and once his phone was dialed falsely represented himself as an employee of Norbrek and claimed that the check was valid as it represented insurance proceeds. The court noted that in nine years it had never seen a case where someone has been willing to put a telephone number on the check and then act as the person who has drawn the check. The government also countered the argument made by Zopf that the conspiracy was one of a "bunch of crack heads" by stating that, according to the PSR, Petitioner is not a crack head, has never used illegal drugs, has a high school diploma, and 36 hours of college at Southern Illinois University. The government contended that Petitioner is the one who hatched the scheme and has prior convictions for unlawful use of a credit card and has experience with check-making software.

The court, citing the law in the Harvey case, found that Petitioner's actions involving the scheme, when taken as a whole, were strong evidence of a scheme that was extensively planned and executed with careful attention to detail. The court noted that the scheme was complex and unusual and appeared to be precisely the intricate conduct that the Sentencing Commission was contemplating with the sophisticated means enhancement. The court found that the PSR properly characterized the facts as fitting under the enhancement. The court concluded that the probation officer and government's position was correct by a preponderance of the evidence and applied the 2-level upward adjustment for sophisticated means.

The next objection filed by Petitioner was his objection to the 4-level increase as a leader or organizer of extensive criminal activity. In paragraph 42, on page 15 of the PSR, Petitioner was accused of recruiting co-conspirators to serve as drivers and passers of fraudulent checks. He warned participants of the potential legal risks they were taking by negotiating and passing the bogus checks. Petitioner arranged for the checks to be shipped to himself from California to locations in Danville, assuring his control over the checks. He purchased the typewriter seized from a co-conspirators residence that was used to complete certain checks. All of the proceeds from the fraudulent checks were turned over to Petitioner by the co-conspirators so that Petitioner could distribute the funds as he deemed appropriate. The PSR concluded:

> "Therefore, defendant Robinson assumed the role of organizer or leader of this offense, which involved five or more participants, including those referenced in the offense conduct (see paragraph 20). A four-level upward adjustment is applied. U.S.S.G. § 3B1.1(a)."

Attorney Zopf claimed that Petitioner and a co-conspirator, Cornelius Wilson, were co-

equals. The only difference being that Wilson plead first and had the opportunity to talk about Petitioner. Zopf contended that were Petitioner allowed to speak first, he would have alleged the same things about Wilson and that Wilson was a supervisor. The government responded Petitioner was more culpable than Wilson in the overall scheme. The government cited the facts listed in the PSR paragraph 14, that show Petitioner controlled the bogus checks used and distributed the proceeds from the scheme. He organized the shipment of the bogus checks from California to Danville. It was Petitioner who was on the other end of the phone number on one of the bogus checks.

The court noted that the key facts were that Petitioner ended up with the money from the cashed fraudulent checks, it was Petitioner who distributed the proceeds, and it was Petitioner who handled the bogus phone number as a representative of Norbrek LP. The court found that it was not just by a preponderance of the evidence that Petitioner was an organizer of the criminal activity, but rather it was beyond all reasonable doubt. The 4-level upward adjustment was added.

The final unresolved objection was on page 16, paragraph 50 of the PSR, concerning the assignment of two criminal history points for a offense that Petitioner pleaded guilty to in case 93-CF-478, on October 18, 1996, in Vermillion County, Illinois. In that case Petitioner was accused of possessing an altered Visa credit card in 1993. Petitioner plead guilty on October 18, 1996, and received 18 months probation, 154 days in jail (time served), and fined $200. On June 5, 1998, a Petition to Revoke was filed and a warrant for failure to appear was issued in the case on July 13, 1998.

Attorney Zopf argued that the points for this conviction were devastating to Petitioner because it moved him up into a criminal history category of V. Zopf claimed that this was not a

criminal violation, but rather likely the result of a failure to pay restitution or some other "technical" condition. The government countered that Petitioner was convicted of felony possession of an altered credit card. He was sentenced to 154 days in jail (time served) which exceeded 60 days, making it worth two points under the guidelines if the conviction was within 10 years of the instant offense, which it was. The conviction was October 1996 and Petitioner was charged in the instant case in January 2006.

The court found that the conduct from the 1996 case is very similar to the conduct Petitioner plead guilty to in the instant case. The court found that this is precisely the type of case to which the guideline provisions applied under U.S.S.G. § 4A1.1(b).

The court also inquired of Zopf whether Petitioner had any other objections other than the ones listed in the PSR that would effect Petitioner's offense level, criminal history category, advisory guideline range, or statutory sentencing. Zopf indicated that Petitioner did initially on the draft report, but based upon further conferences, he agreed with Zopf's strategy at that point and joined with him. The court then conducted its own inquiry of Petitioner. Petitioner indicated that he was aware of the three objections on which Zopf would be proceeding that day and that he was in agreement with Zopf and joined him on those objections. Petitioner stated that he did not have any other objections that Zopf was not presenting. He was not forced nor promised anything to not raise any other objections.

Thiscourt then, by a preponderance of the evidence, adopted the entire PSR from pages 1 through 25, paragraphs 1 through 100. Under the advisory Sentencing Guidelines, the court calculated an offense level of 18 with a criminal history category of V. The advisory sentence was 51 to 63 months. Restitution was set at $21,719.34.

The government asked for a 63 month sentence, as it was an extensive plan, involved actual loss of $21,719, and Petitioner's attempt to barricade himself and throw the check making software out the window when he was arrested in Los Angeles. Attorney Zopf asked for 51 months on Petitioner's behalf as there are no crimes of violence in Petitioner's background and once arrested he did not resist. Petitioner then made a brief statement apologizing to his mother and son. The court adopted the position of the government and sentenced Petitioner to 63 months in the Bureau of Prisons. Restitution in the amount of $21,719 was also ordered.

Petitioner filed a direct appeal in his case and the Seventh Circuit issued an opinion on August 7, 2008, as United States v. Robinson, 538 F.3d 605 (7th Cir. 2008). On appeal, Petitioner challenged his sentence and contended that this court erroneously applied upward adjustments for using sophisticated means. Robinson, 538 F.3d at 606. The Seventh Circuit noted that, in this case, the checks were printed with actual bank routing numbers, the names and bank account numbers of legitimate entities, and a telephone number was added that, if dialed, allowed Petitioner to confirm the checks' authenticity to the caller. Robinson, 538 F.3d at 607. The court found that Petitioner's use of fictitious contact information to help conceal the invalidity of his scheme parallels the facts in another of their cases, United States v. Allen, 513 F.3d 712 (7th Cir. 2008), where the court found a defendant had used sophisticated means in a fraud case, and thus satisfied the requirements of U.S.S.G. § 2B1.1(b)(9)(C). Robinson, 538 F.3d at 607-08. The court concluded that Petitioner's conduct satisfied the sophisticated means requirement because it displayed a "'greater level of planning or concealment'" than the typical case. Robinson, 538 F.3d at 608. The court also rejected an argument made by Petitioner that this court could not give Petitioner upward adjustments for both sophisticated means and being an organizer of the scheme. The court noted that "a slight overlap

between the facts that justify an upward adjustment for 'sophisticated means' and an upward adjustment for a leadership role does not prohibit the district court from applying both." Robinson, 538 F.3d at 608.

The Seventh Circuit's decision came down on August 7, 2008, and a mandate was issued in the case on September 2, 2008. Petitioner subsequently filed this Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 (#1). On December 5, 2008, Petitioner filed a "Motion to Amend Pursuant to Fed. R. Civ. P. 15(c) Movant's Pro Se Motion and Memorandum for Post Conviction Relief to Fully Clarify and Support the Claims Raised Therein (#3), which was essentially just a motion to file a memorandum of law to clarify and support the claims of his § 2255 Motion (#1). A Memorandum of Law In Support of Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (#4) was filed by Petitioner that same day. The court hereby GRANTS Petitioner's Motion to Amend (#3) and will incorporate Petitioner's Memorandum of Law (#4) into its review and consideration of Petitioner's § 2255 Motion (#1). The government filed its Response to Petitioner's Motion Pursuant to 28 U.S.C. § 2255 (#5) on December 16, 2008. Petitioner filed his Reply (#6) to the government's Response (#5) on January 6, 2009, and this case is now ripe for decision.

## ANALYSIS

Petitioner's § 2255 Motion (#1) contains five grounds on which he believes his constitutional rights were violated and necessitate a new trial. The court will address each issue in turn, first describing Petitioner's position, then showing the government's response, and finally the court's ruling on the issue.

GROUND 1

Petitioner's Claim

In his first ground in his § 2255 Motion, Petitioner alleges that the 4-level enhancement for his role as a "leader/organizer" of five or more participants in the scheme to defraud First Midwest Bank of Danville, when there were only three participants involved in actually cashing the checks, was improper. Petitioner also makes the argument that under United States v. Booker, 543 U.S. 200 (2005) and Blakely v. Washington, 542 U.S. 296 (2004) the court violated his Sixth Amendment rights under the United States Constitution when it utilized a preponderance of the evidence standard to enhance Petitioner's offense level based on facts neither charged in the indictment nor admitted by Petitioner at his guilty plea hearing.

Government's Response

The government claims that Petitioner has raised this claim on appeal and that it was rejected by the Seventh Circuit. On the merits, the government contends that even after the Booker decision by the Supreme Court, district judges may still make findings at sentencing using a preponderance of the evidence standard based on facts not charged in the indictment or admitted by the Petitioner. Further, as to Petitioner's role in the offense, the government argues that Petitioner was more culpable in the offense as he maintained control over the checks, arranged for the checks to be shipped from Los Angeles to Danville, warned his accomplices of the risks of the undertaking, and distributed the proceeds to other schemers.

The Court's Ruling

Petitioner's claim regarding his role in the scheme was addressed already somewhat on appeal, albeit not directly. As it was not directly addressed on appeal, this court will consider it here in the § 2255 Motion. Petitioner first argues that the court erred by applying the enhancements by

a preponderance of the evidence standard. The court, however, is allowed to do this. The Seventh Circuit has held that, even after the Supreme Court's ruling in <u>Booker</u>, that judges may make findings at sentencing under a preponderance of the evidence standard. <u>United States v. Thompson</u>, 523 F.3d 806, 813 (7th Cir. 2008). In <u>United States v. Shannon</u>, 518 F.3d 494 (7th Cir. 2008), the Seventh Circuit wrote that:

> "District court judges do not violate the Constitution when they find facts by a preponderance of the evidence for purposes of calculating a guideline range, as long as the guidelines remain advisory and the ultimate decision is based on consideration of the § 3553(a) factors." <u>Shannon</u>, 518 F.3d at 496.

As it was not error for the court to use a preponderance of the evidence standard to enhance Petitioner's sentence, the court now turns to the issue on the merits. Clearly, the evidence at sentencing and in the PSR established that Petitioner assumed a leadership/organizer role in the scheme. All proceeds from the fraudulent transactions were given to him and he disbursed them to his co-conspirators as he saw fit. Petitioner also maintained control over the fraudulent checks and impersonated a Norbrek employee/representative over the phone in order to make one of the bogus checks look legitimate when the Currency Exchange called to investigate. The court properly found that Petitioner was an organizer/leader of the scheme and properly applied the enhancement under the Sentencing Guidelines.[1]

---

[1] It should be noted that, while the issue was not addressed directly on appeal, it did arise indirectly as it related to the sophisticated means enhancement. The Seventh Circuit recognized that the district court had applied both the sophisticated means and leader/organizer enhancement and that while some of the factors in both enhancements did overlap, the slight overlap did not prohibit the district court from applying both. <u>Robinson</u>, 538 F.3d at 608. So, while the Seventh Circuit did not directly rule on the propriety of the leader/organizer enhancement, it did not

GROUND 2

Petitioner's Claim

Petitioner next claims that the court improperly added an enhancement for the use of sophisticated means in accomplishing the bank fraud. This issue can be easily disposed of, however, as this was the sole issue addressed by the Seventh Circuit on Petitioner's direct appeal. The Seventh Circuit has held:

> "Although res judicata does not apply in § 2255 proceedings, 'the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in prior § 2255 proceedings.' Taylor v. United States, 798 F.2d 271, 273 (7th Cir. 1986), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 983 (1987). Indeed, in the absence of changed circumstances of fact or law, we will not reconsider an issue that was already decided on direct appeal." Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995).

Here, Petitioner is essentially challenging the court's enhancement of his guideline range based on the use of sophisticated means. This issue was already fully litigated at the trial level and on the direct appeal. The Seventh Circuit found that it was proper for this court to enhance Petitioner's guideline range based on the "sophisticated means" by which his scheme was carried out. Robinson, 538 F.3d at 608.

GROUND 3

Petitioner's Claim

---

express any disapproval for the district court's application of that enhancement.

Petitioner's third ground is that this court committed procedural error when it calculated his Sentencing Guidelines range by not following the "Application Instructions" found in the U.S.S.G. § 1B1.1. Petitioner claims that his guidelines were improperly calculated by holding him responsible for a total "intended loss" of $91,169.63 and that he should only be held responsible for the actual loss charged in the seven counts of the indictment. Petitioner argues that instead of using the conduct charged in each individual count of the indictment to determine whether the "specific offense characteristics" of U.S.S.G. § 2B1.1(b) applied concerning loss, the court utilized amounts concerning other potential fraud accusations and "intended loss" to make the determination. Petitioner argues this "intended loss" should never have been taken into account by the trial court and that his total offense level should have been 9, instead of the 18 it ended up being.

Government's Response

The government first responds that Petitioner's argument that the court improperly calculated his guideline range has already been litigated in this court and on appeal. The government contends that when a federal prisoner raises a claim that has been decided on direct review, he cannot later attempt to relitigate this claim in a § 2255 proceeding. If the court were to consider Petitioner's claims on the merits, however, the government posits that Petitioner's argument is frivolous, as the Sentencing Guidelines clearly instruct the court to determine the "loss" in the case, which includes "intended loss" as calculated from the relevant conduct, not just the charged conduct.

The Court's Ruling

In terms of calculating loss under the Sentencing Guidelines, the court will apply the greater of actual or intended loss. United States v. Adcock, 534 F.3d 635, 642 (7th Cir. 2008). The court is allowed to calculate intended loss, which is defined as:

> "'Intended loss' (I) means the pecuniary harm that was intended to result from the offense; and (II) included intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value). U.S.S.G. § 2B1.1, comment n. 3(A)(ii).

Under the sentencing guidelines, the base offense level for a violation of 18 U.S.C. § 1344 is 7, but that offense level may be bumped up as many as 30 levels depending on the amount of loss attributable to Petitioner's fraud. U.S.S.G. § 2B1.1(a), (b)(1); See United States v. Roberts, 534 F.3d 560, 573 (7th Cir. 2008). In a bank fraud case under 18 U.S.C. § 1344, loss can be defined either as actual or intended loss and used by the district court in its calculation of the loss attributed due a defendant's fraud under § 2B1.1. See United States v. Riley, 493 F.3d 803, 810 (7th Cir. 2007). In the instant case, Petitioner's base level offense was 7. Defendant was held responsible for an actual loss of $27,956.11 and an additional intended loss of $63,213.52, for a total loss of $91,169.63. Robinson, 538 F.3d at 606. Under the Sentencing Guidelines, this gave Petitioner a base offense level of 15, as it was a loss that exceeded $70,000. Robinson, 538 F.3d at 606; U.S.S.G. § 2B1.1. Adding in the two points for use of sophisticated means, the four points for Petitioner's leadership role, and subtracting the three points for timely guilty plea and acceptance of responsibility, Petitioner was left with a total offense level of 18. Combined with his criminal history category of V, Petitioner's guideline range was properly calculated at 51-63 months. As Petitioner's Sentencing Guideline range was properly calculated, Claim 3 of his § 2255 Motion is without merit.

GROUND 4

Petitioner's Claim

Petitioner's fourth ground contained in the § 2255 Motion is that he should have had a criminal history category of IV, rather than V, because he was not on probation in case #6-MP-02086, Los Angeles County, and also because case #93-CF-478 out of Vermillion County, Illinois, had been quashed prior to sentencing.

Government's Response

The government first responds that since this claim is not a constitutional issue, it is waived since it was not raised on direct appeal.

The Court's Ruling

Non-constitutional claims that could have been raised on direct appeal, but were not, are deemed waived even without taking cause and prejudice into account. Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997). Petitioner is challenging the computation of his criminal history category based on certain past charges in Los Angeles County, California and Vermillion County, Illinois. This is a non-constitutional claim and also one that could have been raised on his direct appeal. As it was not, the court finds it is waived. Barnickel, 113 F.3d at 706.

GROUND 5

The final ground raised in Petitioner's § 2255 Motion is that his Sixth Amendment right to effective assistance of counsel was violated. Petitioner appears to raise three instances where he feels his counsel was ineffective: (1) counsel failed to investigate and file "appropriate motions" to challenge the sophisticated means and leader/organizer enhancements, such as counsel's failure to submit a motion for the prosecution to produce evidence of the alleged conversation between Petitioner and the Currency Exchange employee regarding the fake telephone number on one of the bogus checks; (2) Counsel failed to go over the criminal history computation with Petitioner and

tricked Petitioner into signing the plea agreement; and (3) counsel used case law at the sentencing hearing that Petitioner asked him not to use. Each of these claims will be dealt with in turn.

To prevail on a claim for ineffective assistance of counsel, the Petitioner must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) that counsel's poor performance prejudiced the outcome of the proceedings. Strickland v. Washington, 466 U.S. 668, 687 (1984).

### Claim 1

Petitioner first claims that counsel failed to investigate the sophisticated means, intended loss, and leader/organizer sentencing enhancements. The government responds that Petitioner has simply made conclusory arguments and fails to allege any facts that counsel would have found that would have allowed counsel to successfully challenge the enhancements.

### The Court's Ruling

The court agrees with the position as stated by the government. Petitioner has not produced or stated any specific facts or actions that counsel could have taken to successfully challenge the enhancements. The record does reflect that counsel made argument against the enhancements on Petitioner's behalf at sentencing, but when fully considered by the court, the court rejected those arguments. Further, the Seventh Circuit, particularly on the sophisticated means issue, affirmed the propriety of the district court's application of the enhancements. Defense counsel's performance did not fall below an objective standard of reasonableness.

### Claim 2

Petitioner's second claim regarding ineffective assistance is that counsel failed to consult with him on the computation of his criminal history category and that counsel "tricked" him into signing

the plea agreement. Petitioner argues that he was told by counsel and the government that he would have a criminal history category of II, not V, and that he only signed the plea agreement because he believed his criminal history category would be II and was shocked to find, upon receipt of the PSR, that not only was his criminal history category V, but that he would also be receiving enhancements for being a leader/organizer and using sophisticated means.

The government responds that Petitioner's claims are again conclusory with no actual factual evidence to support them.

The Court's Ruling

In Galbraith v. United States, 313 F.3d 1001 (7th Cir. 2002), the Seventh Circuit asserted that a § 2255 motion must be accompanied by a detailed and specific affidavit which shows that Petitioner had actual proof of the allegations going beyond mere unsupported assertions. Galbraith, 313 F.3d at 1009. Petitioner has not provided that here. Instead, he has charged that counsel lied to him about the criminal history category and that he was "tricked" into signing the guilty plea. Petitioner's claims do not stand up when compared with the record. The court conducted a lengthy and exhaustive inquiry as to the voluntariness of Petitioner's guilty plea, whether Petitioner had read the plea agreement, and whether Petitioner understood the plea agreement. Petitioner answered all questions in the affirmative. Further, as pointed out by the government, there were no agreements in the plea agreement concerning the enhancements. The enhancements were found by the court after they were applied by the PSR. Counsel's performance was objectively reasonable.

Claim 3

Petitioner's third claim regarding ineffective assistance is that counsel was ineffective for submitting case law to the court, United States v. Harvey, 413 F.3d 850 (7th Cir.2005), that was later

used by the government to argue in support of the sophisticated means enhancement. Counsel's performance in this respect certainly did not fall below an objective standard of reasonableness. Harvey is a recent Seventh Circuit case that is very relevant to Petitioner's situation. It is highly likely that the government or the court itself would have located the case and consulted it. Defense counsel argued before the court that Harvey was distinguishable from Petitioner's situation. It was sound strategy to use Harvey to show why Petitioner's case was distinguishable and why the sophisticated means enhancement should not apply. Petitioner has made no showing that counsel's performance was deficient or that he was in any way prejudiced by the use of the Harvey case. Petitioner's claim must fail.

For the foregoing reasons, Petitioner's § 2255 Motion to Vacate, Set Aside, or Reduce Sentence (#1) is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion to Amend Pursuant to Fed. R. Civ. Pro. 15(c) to include Memorandum for Post Conviction Relief to Fully Clarify and Support the Claims Raised Therein (#3) is GRANTED and the court read and considered the Memorandum of Law in reaching its decision.

(2) Petitioner's Motion to Vacate, Set Aside, or Reduce Sentence Pursuant to 28 U.S.C. § 2255 (#1) is DENIED.

(2) This case is TERMINATED.

ENTERED this 21st day of January, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE